UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN WESLEY WILLIAMS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>S. ALFARO, et al.,<br><br>　　　　Defendants. | Case No. 1:17-cv-01310-AWI-JLT (PC)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO REVOKE PLAINTIFF'S IN FORMA PAUPERIS STATUS, AND GRANTING PLAINTIFF'S MOTION TO PROCEED WITH THIS ACTION**<br><br>**(Docs. 25, 35)**<br><br>**TWENTY-ONE DAY DEADLINE** |

On October 19, 2017, plaintiff was identified as a three-strike litigant pursuant to 28 U.S.C. §1915(g) but was nonetheless granted leave to proceed in forma pauperis under the "imminent danger" exception of the statute. (Doc. 7.) Defendants now move to revoke his in forma pauperis status on the ground that plaintiff was not in imminent danger when he filed this action. (Doc. 25.) Plaintiff opposes the motion. Because the Court finds that the defendants have not met their burden in seeking modification of the determination regarding plaintiff's in forma pauperis application, their motion will be denied.

**I.　　Relevant Procedural Background**

Plaintiff initiated this action on October 2, 2017, and is proceeding on his original complaint that was screened and found to state the following claims: (1) First Amendment claims for damages

against Defendants Villarrial, Dollarhide, Longoria, and Noland in their individual capacities; (2) Eighth Amendment excessive force claims for damages against Defendants Campbell, Morelock, Longoria, Noland, and Burns in their individual capacities; (3) Eighth Amendment medical claims for damages against Defendants Dollarhide, Noland, and Burns in their individual capacities; (4) Fourteenth Amendment Equal Protection claims for damages against Defendants Longoria, Noland, and Alvarado in their individual capacities; and (5) ADA claims against Defendants Alfaro and Sexton in their official capacities. (Docs. 1, 11, 14-15, 19.)

On October 19, 2017, the previously-assigned magistrate judge Michael J. Seng[1] found that plaintiff is a three-strike litigant but nonetheless granted his motion to proceed in forma pauperis because plaintiff made specific allegations that the defendants were engaged in ongoing to encourage plaintiff to self-harm. (Doc. 7.)

On March 30, 2018, defendants appeared by filing the instant motion. Plaintiff opposes the motion. This matter is fully briefed and ready for disposition.

## II.     Plaintiff's Allegations[2]

Plaintiff suffers from a psychiatric disorder, Self-Injurious Behavior ("SIB"), where he cuts himself with sharp objects to relieve anxiety and other mental distress. Plaintiff does not typically attempt suicide; however, SIB can lead to dangerous levels of self-harm.[3] In September 2016, plaintiff arrived at California State Prison, Corcoran ("CSPC") to participate in CDCR's Mental Health Delivery System ("MHSDS").

### A. First Amendment Retaliation

#### 1. October through December 2016

Between October and December 2016, on at least 2-4 separate occasions, when plaintiff went to take medications prescribed to help alleviate his urges to cut, Noland and Longoria openly

---
[1] This case was reassigned on April 19, 2018. (Doc. 28.)

[2] Only those allegations that were deemed to state a cognizable claim are included here. Specifically excluded from this summary are allegations suggesting a conspiracy or coordinated conduct on the part of the defendants to violate plaintiff's rights or to encourage him to engage in self-harm.

[3] See R.M. Winchel & M. Stanley, *Self-injurious behavior: a review of the behavior and biology of self-mutilation*, 148 J. Psychiatry 306, 306-317 (1991).

ridiculed plaintiff and other MHSDS prisoners in line for medication. They called these inmates, "J-cat, weirdo, dum nut, and retart [sic]." Prison co-workers laughed at these insults. On 2-3 incidences when plaintiff complained of this treatment, Longoria and Noland, along with other officers, hand-cuffed plaintiff, pushed him into walls while escorting him to a holding cage, and continued to call him names. Plaintiff was then locked in a holding cage for 1-2 hours while handcuffed. Defendants falsely claimed this was due to plaintiff being suicidal. Plaintiff felt humiliated, could not sleep, and engaged in self-harm.

### 2. April 12, 2017

On about April 12, 2017, plaintiff's counselor determined that plaintiff was eligible for a Level III override referral to a progressive programming facility at California State Prison – Los Angeles. Plaintiff contends this facility is safer than CSPC.

On May 30, 2017, plaintiff learned that his referral was not going through. On June 2, 2017, Dollarhide advised plaintiff that plaintiff's case needed to be taken back to the committee in order to be approved. However, on June 4, Dollarhide said that Villarrial had intervened and stopped the Level III override from going back to the committee because plaintiff "files a lot of complaints." Villarrial refused to hold a new committee for plaintiff's referral. He falsified information about plaintiff not meeting behavioral requirements and used this as a pretense to reject plaintiff's referral. As a result of being denied the referral, plaintiff engaged in self-harm from June 6, 2017 to June 27, 2017.

## B. Eighth Amendment Excessive Force

### 1. October through December 2016

During the same October through December 2016 period referenced above, Noland and Longoria along with other officers, hand-cuffed plaintiff, pushed him into walls while escorting him to a holding cage, and insulted him as he was seeking mental health care.

### 2. January 23, 2017

On January 23, 2017, there was a gang-related disturbance. Although plaintiff was not involved, he was ordered to lay prone and shivering in wet grass for two hours. Campbell and

3

Morelock secured plaintiff's wrist with excessively tight restraints. They then commented that plaintiff was an MHSDS inmate as they roughly searched plaintiff and removed his pants, exposing his buttocks. During the search plaintiff's pubic hairs were forcefully ripped out. Defendants roughly pulled up plaintiff's pants and boxer shorts, causing plaintiff discomfort. As plaintiff was putting his feet into his shoes, defendants shoved him forward, preventing plaintiff from putting on one shoe. Other prisoners laughed at this. As a result of this incident, plaintiff engaged in self-harm.

### 3. August 29, 2017

On August 29, 2017, plaintiff was referred to a psychologist. While waiting for the psychologist, plaintiff was placed in a holding cage for five hours without food, water, medication or bathroom access. Plaintiff became agitated and manipulated his restraints to engage in self-harm.

At the 10:00-10:30 shift change, Burns saw plaintiff's cuts and blood and ordered subordinates to leave plaintiff in the cage until after all the other prisoners had been released. After other prisoners had been moved, Burns opened the holding cage door and said, "Stupid J-cat[4], you fucked up my cage with all this blood." Burns pushed plaintiff into walls and then pushed plaintiff chest first into a door causing plaintiff to fall to his knees. Burns removed the blood-stained handcuffs and challenged plaintiff to a fight. Plaintiff refused.

Defendant Burns then secured plaintiff's handcuffs from behind. Burns bent plaintiff's wrists and forced his arms to raise causing pain in plaintiff's wrist, neck and shoulders. Burns urged plaintiff to resist, but plaintiff refused. Burns then joked that plaintiff cut because he was, "a mentally retarded crack baby." Plaintiff felt humiliated.

### C. Eighth Amendment Medical Indifference

#### 1. June 2017

On June 7, 2017, plaintiff's doctor, Dr. Amajoyi, called Dollarhide and informed him that plaintiff was using the weekly-issued razors to self-harm and recommended plaintiff be provided a job assignment. Dollarhide took no action.

On June 20, 2017, Dr. Amajoyi again called Dollarhide and said that plaintiff was using the

---

[4] J-cat is a derogatory term commonly used in prison to identify a prisoner with a mental disability.

4

weekly-issued razor to self-harm and to recommend that plaintiff be given a job assignment. Dollarhide again took no action.

### 2. August 6, 2017

On August 6, 2017, plaintiff attempted to pick up psychotropic medication he had been prescribed to deter the urge to self-harm, but he was prevented from reaching the medication window for over an hour due to an unrelated fight and riot. Plaintiff informed Noland that he needed the medication to prevent his self-harm. Noland replied, "Stupid J-cat," took plaintiff's medication cup, and threw it on the ground.

### 3. August 29, 2017

During the August 29, 2017, incident referenced above, Burns intentionally delayed plaintiff from seeing his counselor, which caused plaintiff to self-harm. When plaintiff was later released from the holding cell, plaintiff asked for medical attention for his self-injury wounds. Burns replied, "You only get medical attention after you fight me." Burns again asked plaintiff to fight him. Plaintiff again refused. Burns then ordered the nurse to falsely record that plaintiff had refused medical aid. Plaintiff was returned to housing without treatment, still bleeding.

## D. Fourteenth Amendment Equal Protection

### 1. December 2016 through February 2017

Between December 2016 and January 2017, MHSDS psychologist non-party Dr. Amajoyi recommended plaintiff be assigned a job position as a part of plaintiff's mental health treatment. On or around February 11, 2017, plaintiff was assigned to a yard crew position. However, Alvarado, Longoria, and Noland refused to call plaintiff to report to work or to put plaintiff to work. In late February, plaintiff asked Alvarado, Longoria, Noland and other officers why he had not been called to work. Longoria stated, "We don't hire J-cats." Noland laughed. Alvarado stated, "Go back to your cell. If we want you, we'll call you." Plaintiff was never called to work.

## E. Americans with Disabilities Act

Plaintiff's Americans with Disabilities Act claim asserted against Alfaro and Sexton in their official capacities is premised on the same conduct underlying plaintiff's equal protection claim –

namely, that plaintiff was assigned to the yard-crew position as part of his treatment plan and was denied the position because of his disability.

### III.    Legal Standards

The Prison Litigation Reform Act of 1995 ("PLRA") permits a federal court to authorize the commencement and prosecution of any suit without prepayment of fees by a person who submits an affidavit indicating that the person is unable to pay such fees. However,

> [i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

This "three strikes rule" was part of "a variety of reforms designed to filter out the bad claims [filed by prisoners] and facilitate consideration of the good." Coleman v. Tollefson, 135 S. Ct. 1759, 1762 (2015) (quoting Jones v. Bock, 549 U.S. 199, 204 (2007)). If a prisoner has "three strikes" under § 1915(g), the prisoner is barred from proceeding in forma pauperis unless he meets the exception for imminent danger of serious physical injury. Andrews v. Cervantes, 493 F.3d 1047, 1052 (9th Cir. 2007). To meet this exception, the complaint of a "three-strikes" prisoner must plausibly allege that the prisoner was faced with imminent danger of serious physical injury at the time his complaint was filed. See Williams v. Paramo, 775 F.3d 1182, 1189 (9th Cir. 2015) (prisoner may also be required to demonstrate imminent danger at the time the notice of appeal is filed); Andrews, 493 F.3d at 1055.

### IV.    Discussion

#### A.    Plaintiff Has Incurred Three Strikes

A review of the actions filed by plaintiff reveals that plaintiff is subject to 28 U.S.C. § 1915(g) because he has sustained at least three § 1915(g) "strikes," which were all entered

before plaintiff filed this action on October 2, 2017[5]:

- Williams v. Narramore, No. 2:03-cv-01972 (C.D. Cal. July 25, 2003). The district court dismissed plaintiff's action because the complaint failed to state a cognizable claim under 42 U.S.C. § 1983. (RJN Fact 2, Ex. Q)

- Williams v. Bonzer, No. 2:04-cv-8941 UA-AJW (C.D. Cal. Nov. 22, 2004). The district court dismissed Plaintiff's action because Plaintiff failed to state a claim upon which relief could be granted. (RJN Fact 3, Ex. R)

- Williams v. Hubbard, No. 2:10-cv-1717 UA-FFM (C.D. Cal. July 6, 2010). The district court dismissed Plaintiff's action because the complaint failed to state a cognizable claim, and the court issued a "strike" under 28 U.S.C. § 1915(g) against Plaintiff. (RJN Fact 4, Ex. S.)

- Williams v. Young, No. 2:08-cv-1737 WBS-CMK (E.D. Cal. Sept. 10, 2011). The district court dismissed Plaintiff's action because the complaint failed to state a cognizable claim even after Plaintiff was granted leave to amend. (RJN Fact 6, Ex. U.)

- Williams v. Harrington, No. 1:09-cv-01823 (E.D. Cal. May 25, 2012). The district court dismissed Plaintiff's action because the complaint failed to state a cognizable claim even after Plaintiff was granted leave to amend and the court issued a "strike" under 28 U.S.C. § 1915(g) against Plaintiff. (RJN Fact 7, Ex. V.)

As the Court previously noted in the October 19, 2017, Order granting plaintiff's request to proceed in forma pauperis, plaintiff has incurred multiple strikes within the meaning of 28 U.S.C. § 1915(g). Plaintiff does not dispute this.

**B.** **Imminent Danger Exception**

---

[5] A court may take judicial notice of its own records, see Molus v. Swan, 2009 WL 160937, *2 (S.D. Cal. Jan. 22, 2009) (citing United States v. Author Services, 804 F.2d 1520, 1523 (9th Cir. 1986)); Gerritsen v. Warner Bros. Entm't Inc., 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015), and " 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'" Bias v. Moynihan, 508 F.3d 1212, 1225 (9th Cir. 2007) (quoting Bennett v. Medtronic, Inc., 285 F.3d 801, 803 n.2 (9th Cir. 2002)); see also United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992).

7

The only real question before the Court is whether the initial determination by Judge Seng that plaintiff adequately alleged imminent physical danger at the time of filing suit was proper.

The law-of-the-case doctrine states that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983). The law-of-the-case doctrine is subject to three limited exceptions: a court may revisit a prior decision if (a) circumstances demonstrate that the earlier ruling was "clearly erroneous and would work a manifest injustice," id. at 618 n.8; (b) substantially different evidence was adduced at a subsequent trial, Minidoka Irrigation Dist. v. U.S. Dep't of Interior, 406 F.3d 567, 573 (9th Cir. 2005); or (c) an intervening controlling change in the law warrants reexamination of the prior ruling, id.; United States v. Mazak, 789 F.2d 580, 581 (7th Cir. 1986). "Failure to apply the doctrine of the law of the case absent one of the [exceptions] constitutes an abuse of discretion." United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997).

Examination of the defendants' motion appears premised on the argument that Judge Seng's initial determination was clearly erroneous. In support, defendants distinguish between two types of allegations in plaintiff's complaint: those involving discrete events and those based on continuing conduct. As to the former, defendants argue that the discrete events predate the filing of this action and therefore do not support a finding of imminent physical danger. As to latter allegations (those premised on the denial of a job, the denial of an override, and the continued provision of razor blades), defendants argue that they are not the cause of any injuries and/or did not cause an imminent risk of serious physical harm at the time this action was filed.

The availability of the imminent danger exception turns on the conditions a prisoner faced at the time the complaint was filed, not at some earlier or later time. See Andrews, 493 F.3d at 1053. "[A]ssertions of imminent danger of less obviously injurious practices may be rejected as overly speculative or fanciful." Id. at 1057 n.11. Imminent danger of serious physical injury must be a real, present threat, not merely speculative or hypothetical.

In finding that the imminent danger exception applies to the facts of this case, Judge Seng relied on the alleged conduct of the defendants of placing plaintiff in situations where he would engage in self-harm:

> The Ninth Circuit has found that allegations of ongoing patterns of placing inmates with histories of self-harm and mental illness in situations that may cause self-harm in contravention of recommendations from medical staff to be sufficient to plausibly indicate imminent danger of serious physical injury. See e.g., Walker v. Scott, 472 F. App'x 514 (9th Cir. 2012) (finding that repeated placement of a prisoner with a history of mental illness in double-cell housing without first completing recommended treatment for coping in that environment sufficient to allege imminent physical danger); Irby v. Gilbert, No. 16-35373, 2016 U.S. App. LEXIS 23591, at *2 (9th Cir. Nov. 14, 2016) (finding a plausible allegation of imminent danger when a prisoner alleged he was denied appropriate psychiatric medication for his depression, that he was suffering anxiety attacks, paranoia, and suicidal thoughts, and that he had previously attempted suicide.)
>
> Here, Plaintiff makes specific allegations that Defendants engaged in an ongoing practice of inhibiting Plaintiff's ability to follow the medical treatment plan for his SIB and engaged in an ongoing pattern of ridicule and harassment in an attempt to encourage Plaintiff to engage in self-harm. These allegations are sufficient to indicate Defendants have engaged in an ongoing pattern of practice that puts the Plaintiff at imminent risk of serious physical injury.

(Doc. 7 at 3-4.)

In their motion, defendants argue that the cases cited by Judge Seng are inapposite. In Walker v. Scott, for example, the defendants were alleged to have placed plaintiff in double-cell housing where the imminent serious physical injury was suicide and violence. Similarly, in Irby, the alleged conduct involved the discontinuation of the plaintiff's medication, and the imminent serious physical harm was plaintiff's suicide. By contrast, the defendants argue that any alleged conduct in this case is not the cause of any injuries to plaintiff and did not cause an imminent risk of serious physical harm. Concerning the access to the razor blades in particular, the defendants argue that any injury sustained from them does not amount to "serious" since it can be treated with antibiotics and the risk of "accidental suicide" is too speculative.

The Court is unconvinced. Not only do defendants fail to cite to any authority in support of the proposition that the availability of antibiotics to treat a wound undermines a claim of seriousness, but they also fail to earnestly acknowledge the serious risk of harm for an individual diagnosed with SIB who is under stress and who has access to sharp objects. Plaintiff has identified two incidents in which defendant Dollarhide was contacted by plaintiff's doctor and specifically informed that plaintiff's continued access to razors was dangerous since he was using them to self-harm, and this defendant failed to mitigate the risk to plaintiff's health. These allegations are sufficient to meet the imminent danger exception. Defendants have thus failed to meet their burden in modifying the law of the case as it relates to plaintiff's application to proceed in forma pauperis.

**V.     Conclusion**

Accordingly, the Court DENIES that the defendants' motion to revoke plaintiff's in forma pauperis status (Doc. 25). Plaintiff's motion to proceed with this action (Doc. 35) is GRANTED, and defendants are directed to file a responsive pleading within twenty-one days from the date of this Order.

IT IS SO ORDERED.

Dated:  **December 11, 2018**              **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE