# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN WESLEY WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>S. ALFARO, et al.,<br><br>Defendants. | Case No. 1:17-cv-01310-AWI-JLT (PC)<br><br>**ORDER DENYING PLAINTIFF'S MOTIONS; AND**<br><br>**(Docs. 54, 55, 63, 69)**<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES AND TO DENY AS MOOT DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**(Doc. 49)**<br><br>**FOURTEEN-DAY DEADLINE** |

Defendants move for summary judgment for failure to exhaust administrative remedies. They also move for judgment on the pleadings on qualified immunity grounds as to one of the claims asserted against Defendants Longoria and Noland. Plaintiff opposes the first motion, but he has not asserted any argument against the latter motion. Plaintiff has also filed several discovery-related motions. Because the undisputed facts demonstrate that Plaintiff did not exhaust his administrative remedies prior to filing suit as to any of his claims, the Court will deny all of Plaintiff's motions, and it will recommend that Defendants' motion for summary judgment for

1

failure to exhaust administrative remedies be granted and that the motion for judgment on the pleadings be denied as moot.

**I.      Plaintiff's Federal Rule of Civil Procedure 56(d) and Local Rule 260(b) Motion**

Plaintiff moves to stay adjudication of Defendants' motion for summary judgment so that the parties may have an opportunity to conduct discovery before proceeding to the merits of his claims. (Doc. 54.) The Court construes this motion as one brought pursuant to Federal Rule of Civil Procedure 56(d) and Local Rule 260(b).

Rule 56(d) provides "a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." United States v. Kitsap Physicians Serv., 314 F.3d 995, 1000 (9th Cir. 2002). A party seeking additional discovery under Rule 56(d) must "explain what further discovery would reveal that is 'essential to justify [its] opposition' to the motion[ ] for summary judgment." Program Eng'g, Inc. v. Triangle Publ'ns, Inc., 634 F.2d 1188, 1194 (9th Cir. 1980) (first alteration in original).

This showing cannot, of course, predict with accuracy precisely what further discovery will reveal; the whole point of discovery is to learn what a party does not know or, without further information, cannot prove. See, e.g., Pac. Fisheries Inc. v. United States, 484 F.3d 1103, 1111 (9th Cir. 2007) ("[T]he purpose of discovery is to aid a party in the preparation of its case ...."); Fed. R. Civ. P. 26(b) advisory committee's note to 1946 amendment) ("The purpose of discovery is to allow a broad search for facts ... or any other matters which may aid a party in the preparation or presentation of his case."). But for purposes of a Rule 56(d) request, the evidence sought must be more than "the object of pure speculation." California v. Campbell, 138 F.3d 772, 779–80 (9th Cir. 1998) (citation omitted). A party seeking to delay summary judgment for further discovery must state "what other specific evidence it hopes to discover [and] the relevance of that evidence to its claims." Program Eng'g, 634 F.2d at 1194 (emphasis added). In particular, "[t]he requesting party must show [that]: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp., 525 F.3d 822, 827 (9th Cir. 2008).

Local Rule 260(b), in turn, provides, in relevant part, "If a need for discovery is asserted as a basis for denial of the motion [for summary judgment], the party opposing the motion shall provide a specification of the particular facts on which discovery is to be had or the issues on which discovery is necessary." E.D. Cal. Local Rule 260(b).

Plaintiff fails to identify any discovery that he believes is necessary to oppose Defendants' motion for summary judgment. Instead, he cites to several cases for the proposition that a court should not grant summary judgment against a party who has not yet had an opportunity to pursue discovery. See, e.g., Jones v. Blanas, 393 F.3d 918, 930-31 (9th Cir. 2004). While this is true, the fact remains that a motion for summary judgment for failure to exhaust administrative remedies is not a vehicle through which the merits of a Plaintiff's claims are reached. Rather, it concerns a preliminary jurisdictional requirement that must be satisfied before the merits may even be reached. Therefore, Plaintiff's motion will be denied.

**II.    Defendants' Motion for Summary Judgment for Failure to Exhaust**

   **A.    Plaintiff's Allegations and Undisputed Facts**

The Court found Plaintiff's complaint to state several cognizable claims stemming from multiple, distinct incidents: 1) a First Amendment retaliation claim against Villarrial, Dollarhide, Longoria, and Noland in their individual capacities; 2) an Eighth Amendment excessive force claims against Campbell, Morelock, Longoria, Noland and Burns in their individual capacities; 3) an Eighth Amendment medical indifference claim against Dollarhide, Longoria, and Burns in their individual capacities; 4) a Fourteenth Amendment Equal Protection claim against Longoria, Noland, and Alvarado in their individual capacities; and 5) Americans with Disabilities Act ("ADA") claims against Alfaro and Sexton in their official capacities.

To facilitate review of Plaintiff's claims and related administrative grievances, the Court will present each incident separately and include evidence of Plaintiff's exhaustion efforts.

Plaintiff is a state prisoner who suffers from a psychiatric disorder, Self-Injurious Behavior ("SIB"), whereby he cuts himself with sharp objects to relieve anxiety and other mental distress. SIB can lead to dangerous levels of self-harm. In September 2016, Plaintiff arrived at California State Prison in Corcoran to participate in the Mental Health Services Delivery System ("MHSDS").

He describes several incidents in which he was deliberately treated poorly by staff members who were aware of his susceptibility to self-harm. Due to these incidents, Plaintiff did indeed engage in self-harm.

### 1. Incident 1

#### a. Plaintiff's Allegations

Between October and December 2016, Defendants Noland and Longoria openly ridiculed Plaintiff and other MHSDS prisoners who were standing in line for medication. When Plaintiff complained about the treatment to these staff members, Longoria and Noland, along with other officers, hand-cuffed Plaintiff, pushed him into walls while escorting him to a holding cage, locked him in the holding cage for 1-2 hours still handcuffed, and continued to call him names.

#### b. Evidence of Exhaustion

There is no evidence that Plaintiff submitted a grievance as to the conduct of thes two Defendants' from October through December 2016. There is, however, an inmate grievance submitted on January 11, 2017, Log No. 17-0305, alleging misconduct by non-party CO Flores and Defendant Noland on January 10, 2017, in the form of tight handcuffs, shoving Plaintiff into a wall, forcefully pushing Plaintiff into a holding cage, and name calling, but this could not have served to exhaust Plaintiff's administrative remedies because it related to a January 2017 incident and it involved different individuals. See Decl. of D. Goree in Supp. of Defs.' Mot. Summ. J. (Doc. 49-5) Ex. V.

### 2. Incident 2

#### a. Plaintiff's Allegations

On or around February 11, 2017, Plaintiff was assigned to a yard crew position as a part of his mental health treatment. However, Defendants Alvarado, Longoria, and Noland refused to call Plaintiff to report to work or to put Plaintiff to work. In late February 2017, Plaintiff asked Alvarado, Longoria, Noland and other officers why he had not been called to work. Longoria stated, "We don't hire J-cats." Noland laughed, and Alvarado stated, "Go back to your cell. If we want you, we'll call you." Plaintiff was never called to work.

#### b. Evidence of Exhaustion

On March 29, 2017, Plaintiff submitted an inmate grievance, Log No. 17-2955, complaining about the refusal of various yard officers to call Plaintiff to work because of his mental health status. See Goree Decl. Ex. CC (Doc. 49-5 at 177-83). This grievance was lost for a period of time. See id.

On May 11, 2017, Plaintiff submitted a Reasonable Modification or Accommodation Request ("RAP") on a CDCR 1824 form, Log No. 17-2507, complaining about the failure of facility staff to allow Plaintiff to report to work because of his "mental health psychiatric disability." Goree Decl. Ex. GG (Doc. 49-5 at 215-16). The RAP was denied on June 1, 2017, because Plaintiff's request did not include any disability discrimination issues. Id. (Doc. 49-5 at 214). Plaintiff was then informed that if he disagreed with the decision, he could submit an inmate grievance.

On June 4, 2017, Plaintiff submitted an inmate grievance regarding the RAP denial. Goree Decl. Ex. JJ (Doc. 49-5 at 258-60). This grievance appears to have been related to the earlier-filed grievance, Log No. 17-2955, and construed at the second level of review as a staff complaint. It was partially granted at the second level of review on July 13, 2017, and then denied at the third level of review on November 3, 2017. Decl. of M. Voong in Supp. of Defs.' Mot. Summ. J. ☐ 11, Ex. YY (Doc. 49-7 at 85-86, 91-92). This grievance did not exhaust Plaintiff's administrative remedies as to this incident because the grievance was processed at the final level of review after this case was initiated.

**3.     Incident 3**

**a.     Plaintiff's Allegations**

On January 23, 2017, there was a gang-related disturbance at CSP-Cor. Although Plaintiff was not involved, he was ordered to lay prone and was shivering in wet grass for two hours. Campbell and Morelock secured Plaintiff's wrist with excessively tight restraints. They then commented that Plaintiff was an MHSDS inmate as they roughly searched Plaintiff and removed his pants, exposing his buttocks. During the search, Plaintiff's pubic hairs were forcefully ripped out. Defendants roughly pulled up Plaintiff's pants and boxer shorts, causing Plaintiff discomfort. As Plaintiff was putting his feet into his shoes, Defendants shoved him forward, preventing Plaintiff from putting on one shoe and causing other prisoners to laugh.

### b. Evidence of Exhaustion

On January 23, 2017, Plaintiff filed an inmate grievance, Log No. 17-0465, concerning this incident. Goree Decl. Ex. W (Doc. 49-5 at 102-09). This grievance was converted to a staff complaint and was partially granted at the second level of review on July 28, 2017. Plaintiff was informed that he could appeal the decision by submitting an appeal to the Secretary's/Third Level of Review, but there is no evidence that Plaintiff submitted the appeal for further review. This grievance therefore did not exhaust Plaintiff's administrative remedies as to this incident.

### 4. Incident 4

#### a. Plaintiff's Allegations

On or about April 12, 2017, Plaintiff's counselor determined that Plaintiff was eligible for a Level III override referral to a progressive programming facility at California State Prison – Los Angeles ("CSP-LAC"). On May 30, 2017, Plaintiff learned that the referral was not going through. On June 2, 2017, Dollarhide advised Plaintiff that his case needed to be taken back to the committee to be approved. Then, on June 4, Dollarhide said that Villarrial had intervened and stopped the Level III override from going back to the committee because Plaintiff "files a lot of complaints." Villarrial refused to hold a new committee for Plaintiff's referral. He also falsified information about Plaintiff not meeting behavioral requirements, using this as a pretense to reject Plaintiff's referral.

#### b. Evidence of Exhaustion

Plaintiff filed several grievances regarding referrals to other institutions. On May 31, 2017, Plaintiff submitted an inmate grievance, Log No. 17-2954, complaining about his exclusion by the Unit Classification Committee ("UCC") on May 3, 2017, from an override to another facility. Goree Decl. Ex. HH (Doc. 49-5 at 221-23). Plaintiff claimed he met all the requirements for a transfer, but he was denied due to a "bogus" Staff Separation Alert that he claims was planted in his file. Plaintiff's grievance was denied at the first level of review on June 22, 2017, and then at the second level of review on September 11, 2017. Id. (Doc. 49-5 at 224-28). There is no record of Plaintiff submitting this grievance to the third level of review.

On June 11, 2017, Plaintiff submitted an inmate grievance, Log No. 17-3020, regarding a

"botch[ed]" UCC action from May 24, 2017. Goree Decl. Ex. KK (Doc. 49-5 at 265-68). This grievance was bypassed at the first level of review and then partially granted at the second level of review on August 1, 2017. Id. (Doc. 49-5 at 269-70). There is no record of Plaintiff submitting this grievance to the third level of review.

On June 21, 2017, Plaintiff submitted an inmate grievance, Log No. 17-3177, complaining about Dollarhide and Villarrial's denial of Plaintiff's override. Goree Decl. Ex. II (Doc. 49-5 at 250-253). The grievance was screened on June 22, 2017, and it was rejected for having exceeded the allowable number of appeals within a 14-day period. Id. (Doc. 49-5 at 249). Presumably upon resubmission, it was screened again at the second level of review on July 3, 2017, and Plaintiff was asked to explain how this grievance was not duplicative of Log No. 17-2954. Id. (Doc. 49-5 at 248). There is no record that Plaintiff pursued this grievance any further.

On September 13, 2017, Plaintiff filed an inmate grievance, Log No. 17-4797, regarding a classification review held by Villarrial and Dollarhide on September 6, 2017. See Voong Decl. Ex. AAA (Doc. 49-7 at 125-40). This grievance was granted in part at the first level of review on October 10, 2017; converted to a staff complaint and partially granted at the second level of review on November 6, 2017; and denied at the third level of review on February 14, 2018. This grievance could not have exhausted Plaintiff's administrative remedies because it was exhausted after this case was initiated.

### 5. Incident 5

#### a. Plaintiff's Allegations

On two to three occasions, Longoria and Noland pushed Plaintiff into walls, put him in a holding cage, and insulted him as he was seeking mental health care. These Defendants were aware of Plaintiff's susceptibility to psychological injury.

#### b. Evidence of Exhaustion

There is no evidence that Plaintiff filed a grievance or otherwise attempted to exhaust his administrative remedies as to this incident.

### 6. Incident 6

#### a. Plaintiff's Allegations

On June 7, 2017, Dr. Amajoyi informed Dollarhide that Plaintiff was using the weekly issued razors to self-harm and recommended Plaintiff be provided a job assignment. On June 20, 2017, Dr. Amajoyi again called Dollarhide and said that Plaintiff was using the weekly issued razor to self-harm and to recommend that Plaintiff be given a job assignment. Dollarhide took no action, and Plaintiff continued to engage in self-harm.

### b. Evidence of Exhaustion

There is no evidence that Plaintiff filed a grievance or otherwise attempted to exhaust his administrative remedies as to this incident.

## 7. Incident 7

### a. Plaintiff's Allegations

Plaintiff was prescribed psychotropic medication to take as needed to deter the urge to self-harm. On August 6, 2017, Plaintiff went to pick up this medicine but was prevented from going to the medication window for over an hour because of a disturbance. Plaintiff informed Noland that he needed the medication to prevent his self-harm. Noland replied "Stupid J-cat" while throwing Plaintiff's medication cup to the ground. Noland moved Plaintiff to sit in the direct sunlight in temperatures above 90 degrees, telling other officers, "This guy is a J-cat, so watch him, and if he moves, shoot him." Plaintiff was left in the sun for over an hour.

### b. Evidence of Exhaustion

On August 7, 2017, Plaintiff submitted an inmate grievance, Log No. 17-4198, complaining about this incident. Goree Decl. Ex. LL (Doc. 49-5 at 287-94). This grievance was converted to a staff complaint and partially granted at the second level of review on September 28, 2017. The institutional inquiry revealed no wrongdoing on the part of any staff members, and Plaintiff was informed that he could appeal to the third level of review if he wished to exhaust his administrative remedies. Plaintiff, however, did not pursue this appeal any further. Accordingly, Log No. 17-4198 did not exhaust Plaintiff's administrative remedies.

## 8. Incident 8

### a. Plaintiff's Allegations

On August 29, 2017, Plaintiff was scheduled to meet with a psychologist. While waiting,

he was placed in a holding cage for five hours without food, water, medication or bathroom access. Plaintiff became agitated and manipulated his restraints to engage in self-harm. When Burns saw Plaintiff's cuts and blood, he opened the holding cage door and said, "Stupid J-cat, you fucked up my cage with all this blood." He then pushed Plaintiff into walls and pushed his chest into a door causing Plaintiff to fall to his knees. Burns removed the bloodstained handcuffs and challenged Plaintiff to a fight. Plaintiff refused.

Burns then secured Plaintiff's handcuffs from behind, bending Plaintiff's wrists and forcefully raising his arms, causing pain in Plaintiff's wrist, neck and shoulders. Burns urged Plaintiff to resist, but again Plaintiff refused. Burns joked that Plaintiff cut because he was, "a mentally retarded crack baby." Plaintiff felt humiliated.

When Plaintiff was released, he asked for medical attention for his wounds. Burns replied, "You only get medical attention after you fight me." Burns again asked Plaintiff to fight him, and Plaintiff again refused. Burns then ordered the nurse to falsely record that Plaintiff had refused medical aid. Plaintiff was returned to housing without treatment and still bleeding.

### b. Evidence of Exhaustion

On September 5, 2017, Plaintiff submitted a CDCR 602 HC Health Care Appeal complaining about this incident, Log No. CO-SC-17000004. See Decl. of S. Gates in Supp. of Defs.' Mot. Summ. J. (Doc. 49-4) Ex. N. The grievance was deemed a healthcare staff complaint; it was denied on December 15, 2017, at the institutional level of review; and it was denied again at the Headquarters level on May 9, 2018. Id. (Doc. 49-4 at 211-12). This grievance could not have exhausted Plaintiff's administrative remedies because the process was completed after this action was initiated.

### B. Legal Standards

#### 1. Summary Judgment Standards

The court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. Anderson, 477 U.S. at 248. A

dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Id. at 248-49.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000); see Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting Celotex, 477 U.S. at 325).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. Nissan Fire & Marine Ins. Co., Ltd., 210 F.3d at 1103. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. See Devereaux, 263 F.3d at 1076. If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. See Celotex, 477 U.S. at 323.

Generally, when a Defendant moves for summary judgment on an affirmative defense on which he bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. See Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992). The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment rather than a motion to dismiss. See Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). On a motion for summary judgment for nonexhaustion, the Defendant has the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available

remedy." Id. at 1172. If the Defendant carries that burden, the "burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. The ultimate burden of proof remains with the Defendant, however. Id. If material facts are disputed, summary judgment should be denied, and the "judge rather than a jury should determine the facts" on the exhaustion question, id. at 1166, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue," id. at 1170-71.

In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating Plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, Plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Plaintiff's pleading is signed under penalty of perjury and the facts therein are evidence for purposes of evaluating the Defendants' motion for summary judgment.

### 2. California's Administrative Exhaustion Rules

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002); Ross v. Blake, 136 S. Ct. 1850, 1856-57 (2016) (mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). All available remedies must be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Porter, 534 U.S. at 524. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Id.; Booth v. Churner,

532 U.S. 731, 741 (2001). Section 1997e(a) requires "proper exhaustion" of available administrative remedies. Woodford v. Ngo, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules." Id. at 90.

The State of California provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). To exhaust available administrative remedies, a prisoner must proceed through three formal levels of appeal and receive a decision from the Secretary of the CDCR or his designee. Id. § 3084.1(b), § 3084.7(d)(3).

The amount of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures. Jones v. Bock, 549 U.S. 199, 218 (2007); see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) ("To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations"). California prisoners are required to lodge their administrative complaint on a CDCR-602 form (or a CDCR-602 HC form for a health-care matter). The level of specificity required in the appeal is described in a regulation:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question. [¶] The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form, and if needed, the Inmate/Parolee Appeal Form Attachment.

Cal. Code Regs. tit. 15, § 3084.2(a)(3-4).[1]

---

[1] Several Ninth Circuit cases have referred to California prisoners' grievance procedures as not specifying the level of detail necessary and instead requiring only that the grievance "describe the problem and the action requested." See Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (quoting Cal. Code Regs. tit. 15, § 3084.2); Sapp, 623 F.3d at 824 ("California regulations require only that an inmate 'describe the problem and the action requested.' Cal. Code Regs. tit. 15, § 3084.2(a)"); Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (when prison or jail's procedures

Exhaustion of administrative remedies may occur if, despite the inmate's failure to comply with a procedural rule, prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process. Reyes v. Smith, 810 F.3d 654, 658 (9th Cir. 2016); e.g., id. at 659 (although inmate failed to identify the specific doctors, his grievance plainly put prison on notice that he was complaining about the denial of pain medication by the Defendant doctors, and prison officials easily identified the role of pain management committee's involvement in the decision-making process).

**C.   Analysis**

Plaintiff's claims are premised on conduct occurring between September 2016 and August 2017. Because Plaintiff filed his complaint on October 2, 2017, he may proceed only on those claims that were exhausted before this case was initiated.

Between September 2016 and October 2017, Plaintiff filed 24 non-healthcare grievances and 15 healthcare grievances. See Goree Decl. ¶¶ 12-13, Exs. O-MM; Gates Decl. ¶¶ 8-9, Exs. A-M. The Court has examined each of these grievances, noting above only those that can be reasonably construed as relating to the incidents identified in the complaint. Based on this evidence, Defendants have adequately demonstrated that administrative grievances were available to Plaintiff, that Plaintiff was familiar with the administrative process and the need to exhaust his administrative remedies prior to filing a federal civil rights action, and that Plaintiff did not exhaust his administrative remedies as to any of the incidents at issue in this case.

Once the Defendants met their initial burden, the burden shifted to Plaintiff to come forward with evidence showing that something in his particular case made the existing administrative

---

do not specify the requisite level of detail, "'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought'"). Those cases are distinguishable because they did not address the regulation as it existed at the time of the events complained of in Plaintiff's pleading. Section 3084.2 was amended in 2010 (with the 2010 amendments becoming operative on January 28, 2011), and those amendments included the addition of subsection (a)(3). See Cal. Code Regs. tit. 15, § 3084.2 (history notes 11-12 providing operative date of amendment). Wilkerson and Sapp used the pre-2011 version of section 3084.2, as evidenced by their statements that the regulation required the inmate to "describe the problem and the action requested" – a phrase that does not exist in the version of the regulation in effect in and after 2011. Griffin is distinguishable because it discussed the Maricopa County Jail administrative remedies rather than the CDCR's administrative remedies. Whatever the former requirements may have been in the CDCR and whatever requirements may still exist in other facilities, since January 28, 2011, the operative regulation has required California prisoners using the CDCR's inmate appeal system to list the name(s) of the wrongdoer(s) in their administrative appeals.

13

remedies effectively unavailable to him. See Albino, 747 F.3d at 1172. In his opposition, Plaintiff claims that several of his grievances were exhausted because they were either (a) converted into a staff complaint, (b) improperly canceled / rejected, or (c) an improper reviewer was assigned. None of these arguments have merit.

### 1. Grievances Converted to Staff Complaints

#### a. General Arguments

As summarized above, the PLRA requires proper exhaustion. In California, that means filing a grievance and following the proper procedures to see that grievance through the third level of review. In his opposition, Plaintiff makes three general arguments regarding those grievances converted to staff complaints. First, he cites to several cases, including Brown v. Valoff, 422 F.3d 926 (9th Cir. 2005), for the proposition that the conversions excluded him from the requirement to proceed to the third level of review. In Brown, the Ninth Circuit held that "a prisoner need not press on to exhaust further levels of review once he has either received all 'available' remedies at an intermediate level of review or been reliably informed by an administrator that no remedies are available." 422 F.3d at 935. At the second level response in that case, the inmate's appeal was partially granted because his allegation of "Staff Complaint" was to be investigated by the Office of Internal Affairs. Id. at 937. The court explained that the inmate could reasonably have understood that no further relief was "available" other than an investigation by the Office of Internal Affairs and concluded that the defendant had not demonstrated that once it ordered an investigation into the alleged misconduct through a separate "staff complaint" process, it had any remaining "authority to act on the subject of the complaint" through the appeals process. Id. at 938.

In contrast, the second level responses to Plaintiff's grievances that were converted to staff complaints specifically informed Plaintiff that he needed to proceed to the third level of review for exhaustion. See, e.g., Goree Decl. Ex. V (second level response to Log No. 17-0305); Goree Decl. Ex. W (second level response to Log No. 17-0465); Goree Decl. Ex. LL (second level response to 17-4098); Voong Decl. Ex. YY (second level response to Log No. 17-2955). Further relief as to each of these incidents therefore remained available to Plaintiff, and it is unreasonable for Plaintiff to have understood that the mere conversion to a staff complaint excused him from exhausting any

14

further.

Plaintiff next argues that staff members reviewing his grievances failed to comply with institutional directives regarding the inclusion of other issues in the grievance. In support, Plaintiff cites to Cal. Code Regs. tit. 15, § 3084.9(i)(2), which states only that the inmate must be informed that the converted staff complaint will not address any other issues, and that those other issues must be appealed separately. The basis of Plaintiff's argument is unclear since it is evident that he was informed of the need to pursue other issues in a separate grievance:

> All issues unrelated to the allegation of staff misconduct must be grieved separately and will not be addressed in this response. You do not exhaust administrative remedies on any unrelated issue not covered in this response or concerning any staff member not identified by you in this complaint.

See, e.g., Gates Decl. Ex. N (Doc. 49-4 at 221 [second level response to Log No. COR SC 17000004]); Goree Decl. Ex. LL (Doc. 49-5 at 292 [second level response to Log No. 17-4198]); Voong Decl. Ex. YY (Doc. 49-7 at 91 [second level response to Log No. 17-2955]). To the extent Plaintiff contends that these "other issues" were exhausted simply because his grievances were construed as staff complaints, Plaintiff cites to no authority in support.

Lastly, Plaintiff claims his grievances suffice to exhaust his administrative remedies because they allege "an ongoing prison practice of discrimination against a specific class." But there is no such claim in this case. As the December 21, 2017 Screening Order found, "Plaintiff has failed to allege facts demonstrating that Defendants helped promulgate or ratify any policy or practice that allegedly violated Plaintiff's rights. Plaintiff's allegations that Defendants allowed or encouraged … correctional staff to harass Plaintiff appear purely speculative." (See Doc. 11 at 11.)

**b.  Specific Grievances**

The Court now turns to the six converted grievances that Plaintiff claims exhausted his administrative remedies: (1) Log No. 17-0305 (Goree Decl. Ex. V), (2) Log No. 17-0465 (Goree Decl. Ex. W), (3) Log No. 17-2955 (Voong Decl. Ex. YY), (4) Log No. 17-4198 (Goree Decl. Ex. LL), (5) Log No. 17-4797 (Voong Decl. Ex. AAA), and (6) Log No. CO-SC-17000004 (Gates Decl. Ex. N).

- **Log No. 17-0305**

Plaintiff argues that Log No. 17-0305 satisfies the exhaustion requirement as to the October through December 2016 conduct of Defendants Noland and Longoria. As noted above, though, Log No. 17-0305 concerns a single incident (as opposed to 2-3 incidents), it involves non-party CO Flores and Defendant Noland (not Defendants Longoria and Noland), and it covers a different time (January 10, 2017 versus a period stretching from October through December 2016). Goree Decl. Ex. V. This grievance therefore could not have exhausted Plaintiff's administrative remedies as to the claims against Noland and Longoria.

- **Log No. 17-0465**

Log No. 17-0465 complained of Campbell and Morelock's conduct on January 23, 2017. Goree Decl. Ex. W. This grievance was converted to a staff complaint and partially granted at the second level of review on July 28, 2017. Plaintiff was then informed that exhaustion required him to proceed to the third level of review, but he did not proceed to that level. Plaintiff's opposition asserts no argument that would justify his failure to exhaust.

- **Log No. 17-2955**

Log No. 17-2955 appealed the denial of a RAP concerning staff members allegedly mistreating Plaintiff and excluding him from a work assignment because of his mental health. Goree Decl. Ex. JJ. Construed as a staff complaint, it was partially granted at the second level of review on July 13, 2017, and it was denied at the third level of review on November 3, 2017. The conversion of this grievance therefore had no bearing on Plaintiff's ability to proceed through all levels of review. Moreover, this grievance could not serve to exhaust administrative remedies as to any claim in this action because the third level response is dated after the initiation of this case.

- **Log No. 17-4198**

Log No. 17-4198 concerned the mistreatment of Plaintiff on August 7, 2017, while he was standing in line to receive pain medication. Goree Decl. Ex. LL. This grievance was partially granted at the second level of review, and Plaintiff did not proceed to the third level of review for exhaustion. Plaintiff's opposition asserts no argument that would justify his failure to exhaust.

- **Log No. 17-4797**

Log No. 17-4797 concerned a September 6, 2017, classification review held by Villarrial

16

and Dollarhide. Voong Decl. Ex. AAA (Doc. 49-7 at 127-29). This grievance was converted to a staff complaint and ultimately denied at the third level of review on February 14, 2018. The conversion of this grievance therefore had no bearing on Plaintiff's ability to proceed through all levels of review. Moreover, this grievance could not serve to exhaust administrative remedies as to any claim in this action because the third level response is dated after the initiation of this case.

- **Log No. CO-SC-17000004**

Health care appeal Log No. CO-SC-17000004 concerned the August 29, 2017, incident in which Burns was upset with Plaintiff for having cut himself in the holding cage. Gates Decl. Ex. N. The grievance was deemed a healthcare staff complaint and ultimately denied at the final level of review on May 9, 2018. This grievance could not have exhausted Plaintiff's administrative remedies because the process was completed after this action was initiated.

### 2. Improper Cancelations or Rejections

Plaintiff also identifies two grievances that he claims were improperly canceled or rejected: (1) Log No. 17-0692 (Goree Decl. Ex. X) and (2) Log No. 17-6129 (Pl.'s Opp'n Ex. G).

- **Log No. 17-0692**

On January 10, 2017, Plaintiff submitted a CDCR 1824 RAP, assigned Log No. 17-0224, regarding the "discriminatory ridicule" he has endured from correctional officers between September 2016 and January 2017 because of Plaintiff's mental health problems and enrollment in MHSDS. See Goree Decl. Ex. X (Doc. 49-5 at 111-23). The RAP was denied on February 3, 2017. Id. (Doc. 49-5 at 116). Plaintiff then appealed the denial of the RAP in a grievance, assigned Log No. 17-0692, which was canceled on February 10, 2017, as duplicative of Log No. 17-0305[2]. Id. (Doc. 49-5 at 128-29).

Plaintiff appealed the cancelation of Log No. 17-0692 in a separate grievance that was assigned Log No. 17-1110. Goree Decl. Ex. X. On April 11, 2017, this new grievance was denied at the second level of review after it was determined that the cancelation of Log No. 17-0692 was

---

[2] As discussed supra, Log No. 17-0305 was submitted on January 11, 2017, accusing non-party CO Flores and Defendant Noland of misconduct in the form of tight handcuffs, shoving Plaintiff into a wall, forcefully pushing Plaintiff into a holding cage, and ridicule. Goree Decl. Ex. 17 (Doc. 49-5 at 93-100).

appropriate. Id. The grievance was then denied at the third level of review on July 13, 2017. Voong Decl. Ex. UU (Doc. 49-6 at 162).

Plaintiff presents no argument as to why the cancelation of Log No. 17-0692 was improper. In any event, this grievance concerned only verbal harassment, which Plaintiff was previously informed is not actionable on the facts alleged.

- **Log No. 17-6129**

Log No. 17-6129 was filed on November 28, 2017 and concerns a UCC action dated November 20, 2017. Pl.'s Opp'n Ex. G. This grievance was filed after Plaintiff initiated this case, and therefore it cannot serve to have exhausted Plaintiff's administrative remedies as to any claim.

### 3. **Improper Staff Reviewers**

Finally, Plaintiff argues that there were improper or biased staff reviewers for three of his grievances: (1) Log No. 2954 (Voong Decl. Ex. BBB), (2) Log No. 17-3020 (Voong Decl. Ex. CCC), and (3) Log No. 17-4797 (Voong Decl. Ex. AAA). Each of these grievances was resolved at the third level of review after this case was initiated. Accordingly, none of them could have served to exhaust Plaintiff's administrative remedies.

### D. **Summary**

Plaintiff initiated this federal civil rights action on October 2, 2017, and the Court screened his complaint and found it to state multiple claims based on eight separate incidents. In their moving papers, Defendants have presented evidence showing that administrative remedies were available to Plaintiff, but that he did not exhaust his administrative remedies as to any of his claims. In his opposition, Plaintiff argued that several of his grievances did exhaust his administrative remedies and/or that circumstances rendered such remedies unavailable. For the reasons stated, Plaintiff has not met his burden to show that any of his claims were exhausted or that remedies were unavailable to him.

## III. **Plaintiff's Discovery Motions**

On April 12, 2019, discovery in this case was stayed pending resolution of Defendant's motion for summary judgment. (Doc. 52.) Since then, Plaintiff has filed three discovery-related motions. (Docs. 55, 63, 69.) Each of these motions will be denied in light of the discovery stay.

## IV. Conclusion

Based on the foregoing, the Court **DENIES** Plaintiff's (1) Motion to Compel (Doc. 55), (2) Motion and Request to Clarify (Doc. 63), and (3) Renewed Motion to Compel (Doc. 69).

Additionally, the Court **RECOMMENDS** that Defendants' motion for summary judgment for failure to exhaust administrative remedies (Doc. 49) be **GRANTED**, that Defendants' motion for judgment on the pleadings be **DENIED** as moot, and that all remaining motions be termed.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 10, 2019**     **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE